# IN THE COURT OF APPEALS OF IOWA

---

No. 24-1167
Filed April 1, 2026

---

**William Paul Roland,**
Applicant–Appellant,
v.
**State of Iowa,**
Defendant–Appellee.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Paul D. Scott, Judge.

---

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

---

James S. Blackburn, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Tabor, C.J., and Ahlers and Langholz, JJ. Buller, J., takes no part.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

After entering an *Alford* plea[1] to a misdemeanor charge of assault with intent to commit sexual abuse, William Roland filed this timely postconviction-relief ("PCR") application challenging that conviction. He asserted an ineffective-assistance-of-counsel claim and an actual-innocence claim. Following a bench trial, the district court found that Roland failed to prove his counsel's performance fell outside the normal range of competency and thus denied his ineffective-assistance-of-counsel claim. And the court agreed with the State that Roland was "barred from raising" his actual-innocence claim because he "entered into a plea agreement pursuant to *Alford* and has presented no new evidence that was unavailable during the initial proceedings." So the court declined to consider whether the evidence Roland presented meets the actual-innocence standard. Roland now appeals.

On our de novo review, we agree with the district court's finding that Roland failed to prove his ineffective-assistance-of-counsel claim. But we cannot square the court's basis for barring Roland's actual-innocence claim with the controlling supreme court precedent recognizing such claims even after a guilty plea. And the State has never argued—on appeal or in the district court—that the evidence Roland presented fails to meet the actual-innocence standard, thus justifying either summary disposition or denial after trial. Nor did the district court decide that merits issue. And so, we cannot affirm on that potential alternative basis for resolving Roland's claim.

We thus affirm the district court's denial of Roland's ineffective-assistance-of-counsel claim, reverse its dismissal of his actual-innocence claim, and remand for further proceedings on the actual-innocence claim.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

## I. Background Facts and Proceedings

In May 2018, Roland was charged with second-degree sexual abuse—a class "B" felony—based on accusations that on multiple occasions between 2011 and 2014, he touched the genitalia of his special-needs child who was under the age of twelve. *See* Iowa Code § 709.3(2) (2011).[2] And the trial information gave notice that the State would seek to enhance his sentence because of a prior sexually predatory offense—doubling his maximum sentence to fifty years in prison. *See id.* § 901A.2(3). The minutes of testimony described Roland's ex-wife's long-term concerns about Roland's behavior with the child based on reports from the child and "nannycam" footage of Roland in bed with the child while rubbing her abdomen and engaging in other questionable behavior. The minutes also described potential testimony of a forensic investigator who found searches and nude photos of preteen girls on Roland's computer and other testimony about the child reporting abuse to her therapist and Roland's history as a registered sex offender.

A local public defender office was appointed to represent Roland. He was assigned an experienced defense attorney in the office to represent him. The office's investigator—a former homicide detective with more than thirty years of experience with the Des Moines Police Department—also assisted with the case, including reviewing much of the discovery materials. And the supervisor of the office—who has extensive expertise on sexual offenses and their collateral consequences, including potential civil commitment as a sexually violent predator—also consulted with the assigned attorney and investigator about defense strategy. Based on the evidence in this case and Roland's criminal history, the defense team concluded that he had substantial

---

[2] In 2013, the provision was moved to Iowa Code section 709.3(1)(b).

risks in proceeding to trial—not just for his likely conviction and sentence but also his potential screening or treatment as a sexually violent predator.

In March 2019, Roland and the State reached a plea agreement. Roland entered a plea under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), to a reduced charge of assault with intent to commit sexual abuse—an aggravated misdemeanor with a maximum prison sentence of two years. *See* Iowa Code §§ 709.11(3), 903.1(2). In the plea, he "acknowledge[d] that there is strong evidence of my guilt and that the Court may consider statements of counsel, the minutes of testimony and police reports to make an independent determination that there is strong evidence of my actual guilt." He also informed the court of his belief that "it is in my best interest to plead guilty," that "I have nothing to gain by going to trial," and that "I have much to gain by pleading guilty." The district court accepted Roland's plea and sentenced him to an indeterminate two-year prison sentence to run consecutive to another conviction.[3] The court also ordered Roland's placement on the sex offender registry and imposed a ten-year special sentence under Iowa Code section 903B.2.[4]

Roland filed this PCR application without the assistance of an attorney in July 2020. He initially asserted only an ineffective-assistance-of-counsel claim. But after he was appointed counsel, Roland filed an amended

---

[3] *See State v. Roland*, No. 18-1917, 2020 WL 7021508, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming that other conviction for sexual exploitation of a minor); *Roland v. State*, No. 23-0671, 2024 WL 4651894, at *1 (Iowa Ct. App. Oct. 30, 2024) (affirming denial of his PCR application for that conviction).

[4] Roland did not appeal his conviction but did appeal a later order requiring him to reimburse the Polk County Sheriff for room-and-board fees. *See State v. Roland*, No. 19-1434, 2020 WL 4497135, at *1 (Iowa Ct. App. Aug. 5, 2020).

application in May 2023, adding an actual-innocence claim as recognized by our supreme court in *Schmidt v. State*, 909 N.W.2d 778, 795-98 (Iowa 2018).

Less than a week before trial, the State moved for summary disposition of the actual-innocence claim on two grounds.[5] First, the State argued that the claim failed because Roland "entered an *Alford* plea," "never admitted his actions and in fact, has maintained his innocence all along," and none of his allegations of actual innocence were "new information or [were] unavailable at the time of the original proceedings." Second, the State argued his actual-innocence claim was barred by the three-year statute of limitations because, even though his original PCR application was timely filed, the actual-innocence claim was not added until an amended application filed after the limitations period had run. The State did not argue that Roland failed to satisfy *Schmidt*'s "clear and convincing standard" for actual-innocence claims by showing that "no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence." *Schmidt*, 909 N.W.2d at 797.

In resistance to summary disposition, Roland argued that his amended actual-innocence claim was timely because it arose out of the same "conduct, transaction, or occurrence" as his original ineffective-assistance-of-counsel claim, so it relates back to that original filing date. Iowa R. Civ. P. 1.402(5). Roland also argued that his *Alford* plea does not bar an actual-innocence claim under *Schmidt*. He highlighted that *Schmidt* held that punishing an actually innocent person violates the constitution, even when the person pleads guilty, and questioned why an *Alford* plea would be treated any differently

---

[5] The State had also asserted a ground for summary disposition of Roland's original ineffective-assistance-of-counsel claim. But that motion was not ruled on before Roland amended the application, and the court understood it to be "no longer in play."

than a general plea or someone who goes to trial since "[p]unishment of an innocent person occurs" in all those circumstances.

The case was tried over two days in February and March 2024. The court heard evidence on Roland's ineffective-assistance-of-counsel claim—including testimony from Roland, his counsel, and the public defender office's supervisor. Although the court expressed strong reservations about whether an actual-innocence claim could be asserted after an *Alford* plea, it reserved ruling on the State's summary-disposition motion and the State's relevancy objections to all of Roland's attempts to call witnesses or offer evidence on his actual-innocence claim. But the court mostly let Roland submit his documentary evidence and witness testimony as offers of proof.

In its eventual written ruling, the court denied Roland's ineffective-assistance-of-counsel claim on the merits. The court found that he had failed to "overcome the presumption that counsel performed his duties competently." It reasoned that "Roland knowingly and voluntarily chose to enter into an agreement with the State and to enter a guilty plea," and indeed "reduc[ed] his exposure at the time of sentencing from 25 years to 2." And the court found that his counsel had begun preparing for trial, which was still "more than two months from when Roland and his counsel were finalizing the plea agreement," and "[t]hat time could have and would have been used for trial preparation had Roland chose to exercise his right to trial."

As for Roland's actual-innocence claim, the court declined to consider its merits. The court agreed with Roland that the claim was timely but still held that "because Mr. Roland entered into a plea agreement pursuant to *Alford* and has presented no new evidence that was unavailable during the initial proceedings, he is barred from raising an actual innocence claim." The court seemed to reason that this rule requiring "new evidence that was

undiscoverable at the time the initial case was resolved" follows the "same logic" as in *Schmidt*. And relying on a critique of *Schmidt* by one of the dissenting justices, the court reasoned that "[i]t is irrational to sustain a claim of actual innocence in a post-conviction relief action when the guilty plea itself is premised on the defendant maintaining his innocence while entering his guilty plea." So the court concluded, "[d]efendants like Mr. Roland do not get two bites of the apple simply because they regret their decision." The court thus denied Roland's postconviction-relief application.

Roland now appeals, challenging the district court's rulings that he failed to prove his ineffective-assistance-of-counsel claim and was barred from bringing an actual-innocence claim.

## II.    Ineffective Assistance of Counsel

Criminal defendants are constitutionally entitled to the effective assistance of counsel. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "A defendant proves ineffective assistance of counsel when he establishes: (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Trane v. State*, 16 N.W.3d 683, 692 (Iowa 2025) (cleaned up). For the first element, the claimant must prove "counsel performed below the standard demanded of a reasonably competent attorney." *Id.* (cleaned up). But "[w]e presume counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence." *Id.* (cleaned up). And to establish constitutional prejudice, "typically, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. State*, 7 N.W.3d 723, 727 (Iowa 2024) (cleaned up). "This element means criminal defendants who seek postconviction relief after pleading guilty must establish

the guilty plea would not have been entered but for the breach of duty by counsel." *Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011).

We review a PCR applicant's ineffective-assistance-of-counsel claim—like other constitutional claims—de novo. *Trane*, 16 N.W.3d at 692. While the district court's factual findings do not bind us, we give them weight, especially when based on witness credibility. *Id.*

The district court and the parties focus on the first prong of Roland's ineffective-assistance-of-counsel claim—whether his counsel "performed below the standard demanded of a reasonably competent attorney." *Id.* (cleaned up). According to Roland, he entered his guilty plea because he did not think his counsel would "provide a proper defense for him at, and before, trial," and "trial would be hopeless." Roland claims he provided "over 1,000 pages of information" that he did not think counsel reviewed because of a busy schedule. He appears to argue that, had his counsel properly investigated his claim and reviewed the evidence, he would have refused the plea deal and proceeded to trial.

The State answers that Roland had the burden to prove counsel did not perform competently yet offered only his own testimony in support. The State points to his counsel's testimony, asserting none of counsel's testimony demonstrated a breach rendering Roland's plea unintelligent or involuntary. The State also highlights Roland's own testimony about discussions he had with counsel about the plea offer, the consequences he possibly faced if convicted, and his decision process in deciding to plead guilty.

Roland offered no evidence that his counsel did not view the documents he provided. Counsel was working with an investigator from his office who viewed and listened to the State's evidence and met with Roland

multiple times. Some of the investigatory steps—such as deposing the child victim—could not be accomplished while maintaining Roland's ability to enter into a plea deal. And negotiating a favorable plea offer for Roland to consider was part of counsel's duties and required knowledge of the case. What's more, if Roland had refused the plea offer, his counsel would have had sufficient time to further investigate and prepare for trial.

We are thus unconvinced by Roland's argument that he accepted the plea deal because counsel did not provide the zealous representation he needed to proceed to trial. Roland had the duty to prove by a preponderance of evidence that counsel did not perform competently. His unsubstantiated opinion that his counsel had not reviewed his evidence and speculation about the quality of representation he may have received at trial is insufficient to meet that burden. So we agree with the district court that Roland failed to prove the first prong of his ineffective-assistance-of-counsel claim. And we affirm the court's denial of that claim.

## III.  Actual Innocence

As for Roland's appeal of the dismissal of his actual-innocence claim, the sole question before us is whether the district court was correct that a person who enters an *Alford* plea "is barred from making an actual innocence claim unless he presents new evidence that was undiscoverable at the time the initial case was resolved." This was the only ground for the district court's dismissal of that claim. It is the only ground on which the State defends that dismissal. And we see no other preserved alternative ground with merit on which we could affirm.[6]

---

[6] The only other ground raised by the State in the district court was its argument that the claim was time-barred because the amended PCR application adding the claim was filed after the statute of limitations had run. But the district court rejected that

On our de novo review of this constitutional claim, we agree with Roland that the district court's extra requirement—imposed on Roland merely because he entered an *Alford* plea—conflicts with *Schmidt*. Before our supreme court's decision in *Schmidt*, it was "well established that a defendant's guilty plea waives all defenses and objections which are not intrinsic to the plea." *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011) (cleaned up); *see also State v. Burgess*, 639 N.W.2d 564, 567 (Iowa 2001) (following that rule to hold that defendant waived defenses to his conviction "by entering an *Alford* plea" since such a plea "is a variation of a guilty plea" with the same effect). But in *Schmidt*, the court "overrule[d] our cases that do not allow defendants to attack their pleas based on extrinsic grounds when they claim actual innocence" and held that a defendant's "pleas do not preclude his actual-innocence claim merely because he pled guilty to charges." *Schmidt,* 909 N.W.2d at 790.

Fleshing out the scope of an actual-innocence claim in Iowa, the court recognized that "the Iowa Constitution permits freestanding claims of actual innocence" that "are available to applicants even though they pled guilty." *Id.* at 795. The court reasoned that "punishing an actually innocent person is disproportionate to the crime (or lack of crime) committed and violates the cruel and inhuman treatment clause." *Id.* at 794 (cleaned up); *see also* Iowa Const. art. I, § 17 (prohibiting the imposition of "cruel and unusual punishment"). It also explained that "[a]n innocent person has a constitutional liberty interest in remaining free from undeserved punishment" and so imprisoning such a person "strikes the very essence of

argument, the State does not challenge that ruling on appeal, and we see no error in the court's reasoning that the actual-innocence claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in Roland's unrepresented original PCR application and thus relates back to that timely application. Iowa R. Civ. P. 1.402(5).

the constitutional guarantee of substantive due process." *Schmidt*, 909 N.W.2d at 793; *see also* Iowa Const. art. I, § 9 (providing "no person shall be deprived of life, liberty, or property, without due process of law"). And according to the court, because "actually innocent people should have an opportunity to prove their actual innocence," their incarceration "implicates procedural due process" too. *Schmidt*, 909 N.W.2d at 793–94.

After examining the varied standards for actual-innocence claims in other jurisdictions, the court adopted a "clear and convincing standard" for claims under the Iowa Constitution. *Id.* at 797. The court explained that to succeed under this standard, an "applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence." *Id.* And the court described this standard as "demanding." *Id.* at 793; *see also Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019) (elaborating that under *Schmidt*'s "demanding standard," an applicant must show that he is "*factually and actually innocent*").

Finally, the court held that these newly recognized constitutional actual-innocence claims can be brought under the postconviction relief statute. Specifically, the court held that both paragraphs "a" and "d" of Iowa Code section 822.2(1) "provide avenues for freestanding actual-innocence claims." *Schmidt*, 909 N.W.2d at 798. Paragraph "a" authorizes claims that "[t]he conviction or sentence was in violation of the Constitution of the United States or the Constitution or laws of this state." Iowa Code § 822.2(1)(a) (2020). So it applies to actual-innocence claims because "[a] conviction of an innocent person violates the Iowa Constitution, specifically

11

the due process clause and the prohibition against infliction of cruel and unusual punishment." *Schmidt*, 909 N.W.2d at 798. And paragraph "d" authorizes claims that "[t]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." Iowa Code § 822.2(1)(d). So this paragraph too applies since "conviction of an innocent person infringes upon the 'interest of justice' precisely because it violates the Iowa Constitution." *Schmidt*, 909 N.W.2d at 798.

Mindful of this controlling precedent, we turn to the district court's legal conclusion that "because he entered an *Alford* plea, Roland is barred from making an actual innocence claim unless he presents new evidence that was undiscoverable at the time the initial case was resolved." And we cannot reconcile this added requirement for asserting an actual-innocence claim with *Schmidt*.

For starters, the court's holding that the "conviction of an innocent person violates the Iowa Constitution," applies just as much to a person convicted after an *Alford* plea as one convicted after any other guilty plea. *Id.* And as a claimed constitutional violation, an actual-innocence claim can be asserted under Iowa Code section 822.2(1)(a), without any statutory requirement that it be based on newly discovered evidence. *See id.*; *cf. More v. State*, 880 N.W.2d 487, 499 (Iowa 2016) (discussing the requirement for newly discovered evidence under section 822.2(1)(d)). After all, if "punishing an actually innocent person is" a constitutional violation, *Schmidt*, 909 N.W.2d at 794 (cleaned up), it matters not whether the person could have found the evidence showing his innocence at the time of the plea or if it was newly discovered—the person is still actually innocent either way.

12

The court in *Schmidt* never distinguishes between *Alford* pleas and other guilty pleas.[7] So when the court overruled all the court's prior "cases that do not allow defendants to attack their pleas based on extrinsic grounds when they claim actual innocence," it did so for all pleas—whether under *Alford* or not. *Schmidt*, 909 N.W.2d at 790. And most of the court's reasoning about "the phenomenon of actually innocent people pleading guilty" applies equally or even more forcefully to a defendant who decides to plead guilty with an *Alford* plea. *Id.* at 786–89.

We thus see no basis in *Schmidt* for treating an actual-innocence claim any differently depending on whether it is asserted after an *Alford* plea or any other guilty plea. To the contrary, doing so would conflict with many of *Schmidt*'s express holdings already discussed—that the "conviction of an innocent person violates the Iowa Constitution," that a defendant's "pleas do not preclude his actual innocence claim merely because he pled guilty to charges," and that such a claim is proper in a PCR proceeding under section 822.2(1)(a). *Id.* at 790, 798. True, the plea at issue in *Schmidt* itself was not an *Alford* plea. *See id.* at 782–83. But this was all essential reasoning to the court's decision. And we—like the district court—are "inferior to the supreme court." Iowa Const. art. V, § 1. So we are not at liberty to ignore or modify this binding precedent by carving *Alford* pleas out of the rules established by *Schmidt* and creating a heightened standard. *See State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) (reasoning that inferior courts "are

---

[7] This make sense since an *Alford* plea is merely "a variation of a guilty plea" and "[i]n effect, the pleas are the same as the defendant is agreeing to the imposition of a criminal sentence for the crime charged." *Burgess*, 639 N.W.2d at 567; *see also id.* at 567 n.1 ("There is no material difference between the pleas, however, when a defendant intelligently concludes his interests require entry of a guilty plea and the State has overwhelming evidence of the defendant's guilt.").

under a duty to follow [the law] as expressed by the courts of last resort, as they understand it, even though they may disagree" and noting that "[i]f our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves").

In reaching its contrary conclusion, the district court relied on a critique of *Schmidt*'s majority opinion by one of the dissenting opinions. *See Schmidt*, 909 N.W.2d at 824 (Mansfield, J., dissenting). There, Justice Mansfield questioned, "After today, does someone who made an *Alford* plea now get to raise an actual innocence claim?" and posited "[t]hat seems strange. After all, nothing has changed. Such a defendant always maintained he or she was innocent." But he also alternatively asked, "Or are *Alford* pleas now unconstitutional in light of today's decision?" And regardless, it is the majority opinion of the court that controls our decision—not the dissent.

The district court further reasoned that "[t]he same logic regarding newly presented evidence in *Schmidt* applies here as well." The court did not explain what logic from *Schmidt* it was following. But the only requirement for newly discovered evidence applied in *Schmidt* was to satisfy the exception to the statute of limitations. *See id.* at 798–99 (majority opinion). Because Schmidt asserted his actual innocence claim long past three years after his conviction was final, he could only bring his claim if his claim was based on a "ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3; *see Schmidt*, 909 N.W.2d at 798–99. This statute-of-limitations analysis has no bearing on the underlying actual-innocence claim. And it is inapplicable here since Roland filed this PCR application within the statute of limitations.

In defending the requirement of newly discovered evidence, the State also points to *Schmidt*'s articulation of the clear-and-convincing-evidence,

14

which says that the applicant must show that "no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, *including the newly discovered evidence*." *Schmidt*, 909 N.W.2d at 797 (emphasis added). But this phrase cannot bear the weight the State places on it. It merely clarifies that "all the evidence" that must be considered in evaluating the claim "includ[es] the newly discovered evidence." It does not say that an applicant *must* come forward with evidence that was unavailable at the time of the guilty plea. If the court were adopting such a heightened requirement, it would have done so more expressly—as it did with its lengthy analysis of all the other essential reasoning. And if the State were correct, that requirement would apply to all actual-innocence claims, not just those after an *Alford* plea.

What's more, the State has directed us to no cases after *Schmidt* where we or the supreme court have required newly discovered evidence to proceed with a timely actual-innocence claim. And quite the opposite, our court has already rejected the State's argument that such a requirement exists in this *Alford* plea context. *See Williams v. State*, No. 18-0758, 2020 WL 1879631, at *3 (Iowa Ct. App. Apr. 15, 2020). There, we concluded that limiting actual-innocence claims to those involving newly discovered evidence "would contravene *Schmidt*" and thus "decline[d] to conclude that a free-standing claim of actual innocence must be premised on newly-discovered evidence." *Id.*; *cf. Russell v. State*, No. 21-0974, 2022 WL 17481880, at *3 (Iowa Ct. App. Dec. 7, 2022) (avoiding applicant's claim that the district court erred in requiring newly discovered evidence for an actual-innocence claim after a jury conviction by affirming the court's alternative ruling that the claim failed on the merits too); *Reynolds v. State*, No. 24-0904, 2025 WL 3165728, at *3 (Iowa Ct. App. Nov. 13, 2025) (analyzing the merits of an actual-innocence claim after an *Alford* plea without any consideration of

whether the evidence was available at the time of the plea); *Taylor v. State*, No. 20-0475, 2021 WL 811170, at \*5 (Iowa Ct. App. Mar. 3, 2021) (same).

And so, we once again decline the State's invitation to "contravene" *Schmidt* by adding a newly-discovered-evidence requirement for actual-innocence claims. *Williams*, 2020 WL 1879631, at \*3. But here, we cannot consider whether Roland's claim fails on the merits because the State has never argued that it does. Not on appeal. And not in the district court. And the district court declined to decide that merits question too. So we must reverse the district court's dismissal of Roland's actual-innocence claim and remand for further proceedings. We express no opinion on the ultimate merits of that claim or whether it can be decided by summary disposition, based on the existing trial record, or only after further factual development by either party at trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**